LARRY WHITE, JR. *v.* STATE OF MARYLAND

[No. 308, September Term, 1972.]

*Decided February 2, 1973.*

The cause was argued before POWERS, MENCHINE and SCANLAN, JJ.

*Karl H. Goodman* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Harry A. E. Taylor, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Diane*

*Schulte, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

This is an appeal from two judgments of convictions of murder in the first degree, following a jury trial in the Criminal Court of Baltimore, with Judge David A. Ross as the trial judge. The appellant was sentenced to two concurrent terms of life imprisonment. On this appeal, the appellant contends: (1) that he did not knowingly and voluntarily withdraw a plea of insanity previously entered; and (2) that he was not afforded effective representation by trial counsel. These contentions are without merit.

## I

## THE PLEA OF INSANITY WAS VOLUNTARILY WITHDRAWN

At the outset of the trial, the clerk of the court below, after summarizing the indictments against the defendant, noted that an insanity plea had been filed on October 7, 1971. He then asked: "What is the plea this morning?" There followed these statements by appellant's trial counsel and the appellant:

"MR. McALLISTER: The plea would be not guilty, and *as to the insanity plea, I have discussed it with my client, and based on the report received from the Clifton T. Perkins Hospital, and knowing what the testimony would be, we are withdrawing that plea,* but for the record, Mr. White, I will explain to you that you have a right to have trial by the Court or jury, is that correct?

"THE DEFENDANT: Yes, sir." (emphasis added).

The report from Clifton T. Perkins Hospital to which

appellant's trial counsel referred stated, in pertinent part, that:

> "Mr. White was presented before a Medical Staff Conference on November 22, 1971 at which time it was the unanimous opinion of the medical staff that he was able to understand the nature and object of the proceedings against him and to assist in his defense. It was also the unanimous opinion of the medical staff that he did not suffer from a mental disorder at the time of the alleged offense such as to cause him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

Despite his assent to the withdrawal on the record of his insanity plea by his trial counsel, appellant now argues that the withdrawal was "a waiver of a constitutional right," analogous, he claims, to a voluntary plea of guilty. Under such an assumption, he maintains that the withdrawal of his insanity plea was not voluntarily made, in that the "record is completely silent as to whether or not the defendant knew the nature and consequences of withdrawing his insanity plea, and neither the court nor the defendant's counsel questioned him on the record."

The dispositive answer to the appellant's attempt to equate a plea of guilty with the withdrawal of a plea of insanity is simply that the two are not the same. First, a plea of insanity is no more than the assertion of an affirmative defense. The defense is not any different in its basic nature than other affirmative defenses, such as self-defense or coercion. At the present time, Maryland Rule 720 provides that an accused "may plead not guilty, not guilty by reason of insanity as provided by statute, guilty, or, with the consent of the court, *nolo contendere.*" Article 59, § 25 of the Code specifies how and when the defense is to be raised and the procedural consequences which follow, including provision for the pre-trial mental

examination of the defendant. However, the fact that the General Assembly has elected to require the defense of insanity to be pleaded specially and has provided the procedures to be observed when it is raised does not convert the defense of insanity into anything more than just that. Like any defense, the question of whether an insanity defense should be raised remains a matter of trial strategy to be determined by counsel after consultation with his client. Were it the law that a plea of insanity could only be withdrawn after searching, detailed, on-the-record interrogation by the trial court, it could be just as plausibly maintained that the same type of judicial inquiry is required before defense counsel might pursue, or curtail, a line of cross-examination, introduce, or object to the introduction of, exhibits, call, or not call, a certain witness, etc. Our system of criminal justice places considerable faith in the integrity of defense counsel. It sometimes may be misplaced. Nevertheless, the law's concern for the rights of an accused stops considerably short of requiring that the trial strategy and tactics adopted by his counsel first receive the approval of the trial judge, whether it be a decision to withdraw a plea of insanity or a decision not to call an alibi witness.[1]

Moreover, acceptance of a plea of guilty entails severe, and usually, irrevocable consequences. A plea of guilty is an admission of conduct and results in a conviction. *McCall v. State,* 9 Md. App. 191, 193, 263 A. 2d 19 (1970). Withdrawing an insanity plea, on the other hand, constitutes no admission of guilt; the State still must prove its case against the defendant beyond a reasonable doubt. In addition, a plea of guilty involves the waiver of basic constitutional rights otherwise guaranteed an accused. These are: "(1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3)

1. For a recent, more comprehensive discussion of the responsibilities that a trial counsel has in waiving his client's rights as a matter of trial tactics or strategy, see *Miller v. Warden,* 16 Md. App. 614, 299 A. 2d 862 (1973).

the right to confront one's accusers." *Williams v. State,* 10 Md. App. 570, 572, 271 A. 2d 777 (1970); *Boykin v. Alabama,* 395 U. S. 238 (1969). By withdrawing an insanity plea, on the other hand, a defendant forfeits no right, substantive or procedural, with the exception of the right to have the jury render a special verdict as to his sanity at the time of the crime.

Under the theory advanced by the appellant, the mere filing of a plea of insanity would serve to rebut the presumption of sanity. Thereafter, it would be difficult for a court to hold that the plea was voluntarily waived or withdrawn until after a hearing at which the sanity of the defendant was established, at least for the purpose of finding that he was competent enough to waive the defense of insanity which he had previously injected into the case. Such a procedure, apart from the delay and complexity which it would generate, might cause the defendant more harm than benefit. For example, it is not difficult to conceive of a situation where a defendant's trial position could be seriously impaired as a result of having been compelled to provide evidence of his sanity as a condition precedent to withdrawing his plea of insanity. *Cf. Avey v. State,* 9 Md. App. 227, 231, 263 A. 2d 609 (1970).

In holding that on the facts of this case the appellant's plea of insanity was voluntarily and knowingly withdrawn, we do not imply that a trial court has no responsibility in such situations. Instances will arise where an obviously incompetent defendant attempts to withdraw an insanity plea which his counsel previously had entered in his behalf. *See, e.g., State v. Fernald,* 248 A. 2d 754, 760-61 (Me. 1968), cited by the appellant in his brief. In such a case, it would be the duty of trial counsel and the responsibility of the court to prevent the improvident withdrawal of the insanity plea. The basic question is one of fundamental fairness, *i.e.,* of insuring that a mentally incompetent defendant is not convicted for a crime he committed at a time when he lacked the requisite mental competency. In the case at bar, there is no evi-

dence that the appellant suffered from any mental disorder such as to cause him "to lack substantial capacity to appreciate the criminality of his conduct or to conform to the requirements of law." His plea of insanity, therefore, was voluntarily withdrawn and the court below committed no error in permitting its withdrawal.

## II

## THE TRIAL JUDGE DID NOT ABUSE DISCRETION IN DENYING THE MOTION FOR A NEW TRIAL

The appellant also contends that he "was not afforded genuine and effective legal representation." Because of Rule 1085, the question of the competency of trial counsel generally is not an issue which will be reviewed on direct appeal. *State v. Zimmerman*, 261 Md. 11, 23, 273 A. 2d 156 (1971). We have consistently adhered to this rule. *Bailey v. State*, 6 Md. App. 496, 252 A. 2d 85 (1969) ; *Harris v. State*, 2 Md. App. 408, 234 A. 2d 781 (1967) ; *Jordan v. State*, 2 Md. App. 415, 234 A. 2d 783 (1967). The primary reason for refusing to hear belated post-trial claims concerning the alleged incompetency of trial counsel is the fact that "counsel, whose professional ability and integrity are impugned, would be afforded no opportunity to be heard." *Harris v. State, supra* at 409. Normally, therefore, the issue is one best left to be raised and pursued under the Uniform Post Conviction Procedure Act.

However, in the case at bar, the appellant expressly raised the issue of the alleged incompetency of his trial counsel as one of two grounds in support of a motion for a new trial. The other ground was his contention that there was a witness who had not been called whose testimony would have contradicted that of the State's chief witness. The trial judge cautioned the appellant that raising the question of the competency of his trial counsel on a motion for a new trial "will probably foreclose your raising that on post conviction which is the way it

is usually raised." Nevertheless, appellant insisted in arguing the question on his motion for a new trial.

At the motion, new counsel appeared for the appellant. Testimony was taken, including testimony by the appellant and his trial counsel. The trial court judge then denied the motion. The evidence adduced at the motion hearing indicated that the missing witness had not been called to testify at trial because the appellant did not want him present. Further, the testimony showed that the witness, if he had testified, would not have altered the weight of the evidence which, as the trial court found, "was absolutely overwhelming as to the guilt of this defendant of the first degree murder of both of the victims."

The trial judge then reviewed the testimony pertaining to the competency of counsel which he had heard on the motion, finding that:

> "As far as the competency of counsel goes, the only element brought forward today in addition to the defendant's evaluation that counsel did not adequately prepare the case, is the failure to call the witness. There's ample evidence that the other eye-witness to these offenses was not called because the defendant did not want him called. Looking at all the evidence that came out at the trial, it probably was a wise decision on the defendant's part not to call that witness.
>
> "Certainly a ground for finding that counsel was incompetent as far as the number of conferences prior to the trial and the trial preparation, one cannot really evaluate how much time an attorney needs to prepare a case, or how many conferences with their clients he needs to have, and what effect he has, except based on the performance at the time of trial. As I reviewed the testimony in my own mind in going through my notes at the previous hearing on the motion for new trial, which was held the

last week in March, as I review it now, I cannot recall any incident during the course of that trial that in any way indicated that Mr. McAllister did not have a command of the facts and issues in the case, and did not in adequate fashion represent the defendant, and present to the jury all matters that could be presented in behalf of his client. There was nothing that occurred during the course of the trial that indicated to the Court that the defendant was not receiving proper and adequate representation, based on the standards which have been set down by the Supreme Court and the Court of Appeals, and the Court of Special Appeals.

"So, that even if we take as totally true everything that the defendant has said, and I do not, that Mr. McAllister did not even discuss the case with him prior to trial, there's no evidence that he was in any way, that he in any way suffered from that during the course of the trial. There's nothing that has been brought out in the two hearings to show that Mr. McAllister failed to do something, or did something during the course of the trial that was prejudicial to his client, that was directly related to his ignorance of the facts in the case, or ignorance of the law applicable to any of the issues in the trial. There was absolutely nothing that occurred during the course of the trial, nor has anything been brought out during the course of these two hearings on the motion for new trial to indicate that because of a lack of preparation Mr. McAllister made an error in judgment in the handling of the trial.

\* \* \*

"I might add, finally, for the record, that I overlooked during the course of my recital of the reasons for the denial of the motion, that

I find as a fact that Mr. McAllister did prior to the trial discuss the facts of the case with the defendant." (T. 283-288).

Where the interest of justice requires it, the granting of a new trial in a criminal case tried before a jury is a matter within the sound discretion of the trial judge and his ruling on a motion for a new trial will not be disturbed on appeal except where there has been a clear abuse of that discretion. *State v. Devers,* 260 Md. 360, 272 A. 2d 794 (1971) ; *Hudson v. State,* 16 Md. App. 49, 69-70, 294 A. 2d 109 (1972). On the facts before the trial judge, and in the light of his findings, it is clear that he did not abuse his discretion in denying appellant's motion for a new trial.

*Judgments affirmed.*