Raymond W. WEBER,
Petitioner-Appellant,

v.

Thomas ISRAEL, Respondent-Appellee.

No. 82–2470.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1983.

Decided March 22, 1984.

As Amended March 23, 1984.

Allen E. Shoenberger, Prof., Loyola University, Pamela Menaker, law student, Chicago, Ill., for petitioner-appellant.

Pamela Magee-Heilprin, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before PELL, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner-appellant, Raymond Weber, appeals the judgment of the United States District Court, Eastern District of Wisconsin, 527 F.Supp. 1182, denying his petition for writ of habeas corpus. We affirm.

I

The record reveals that in early December 1976, the petitioner-appellant, Raymond Weber, was charged with nine counts of party to the crime of armed robbery in violation of Wis.Stat. §§ 943.32(1)(b), (2) and 939.05. On December 13, 1976, Weber appeared with counsel in the Milwaukee County Circuit Court and waived a preliminary hearing on the crimes charged. The following day, Weber appeared for arraignment before Judge McCormick in the Milwaukee County Circuit Court and at that time Weber's counsel entered pleas of "not guilty" and "not guilty by reason of mental disease or defect" on Weber's behalf. Under Wisconsin law when a plea of "not guilty" is joined with a plea of "not guilty by reason of mental disease or defect," the defendant is entitled to a bifurcated trial. See Wis.Stat. § 971.175 (1981–82). During the first phase of the trial, the jury is informed of the two pleas, hears evidence on the issue of guilt, and renders a verdict on the plea of "not guilty." If the defendant is found guilty, the second phase of the bifurcated trial commences and the same jury hears evidence on the plea of "not guilty by reason of mental disease or defect." Id.

On December 14, 1976, following the entry of Weber's pleas at the arraignment proceeding, Weber's counsel informed the court that Weber had become non-communicative and unable to aid in his own defense. At the request of defense counsel, the court ordered Weber to undergo a psychiatric examination to determine Weber's competency to stand trial. The court-appointed psychiatrist concluded, after preliminary testing, that it was "impossible to make a definite estimate as to [Weber's] mental capability" and recommended that Weber be sent to the Central State Hospital for more complete mental testing and further observation. Pursuant to Wis.Stat. § 971.14(2), Weber was committed to the Central State Hospital for a complete mental, social, psychiatric, psychological, and neurological examination. Weber was returned to court for a competency hearing on March 30, 1977, and based upon the testimony of the examining physicians, Judge McCormick concluded that more data was required before Weber's competency to stand trial could be determined. The court again committed Weber to the Central State Hospital to allow the psychiatric staff to perform more extensive testing. Some four months later, on July 29, 1977, Weber was returned to court for another competency hearing and based upon the testimony of Dr. Arndt that Weber was "having symptoms for a need, ... to avoid something, and this is referring to a faking or malingering," and the testimony of Dr. Fosdale that Weber was "not mentally ill, ... the behavior he demonstrates is simulation," Judge McCormick ruled that Weber was competent to stand trial.

On October 11, 1977, Weber appeared in the Milwaukee County Circuit Court with a second attorney who requested that a third battery of psychiatric testing be performed in order to determine his client's competency to stand trial. The court granted the motion and Weber underwent further psychiatric testing. Weber returned to court for a third competency hearing on October 18, 1977, and following psychiatric testimony, Judge McCormick again found Weber competent to stand trial. The case was subsequently reassigned to Judge Wedemeyer who presided as the trial judge in the Milwaukee County Circuit Court. On May 4, 1978, the jury found Weber guilty on only four counts of the nine count indictment of party to the crime of armed robbery in violation of Wis.Stat. §§ 943.-32(1)(b), (2) and 939.05.

A review of the trial record reveals that following the jury's return of its verdict on

the issue of guilt, there was no mention by the defense counsel, Weber, the prosecutor, or the trial judge about an insanity plea or a jury trial on the issue of insanity. The record further reveals that no evidence was introduced on the issue of Weber's insanity at trial, no objections were raised by the defense counsel or Weber concerning the lack of a jury trial on the issue of insanity, and neither the defense counsel nor Weber objected when the trial judge dismissed the jurors following the return of their verdict on the issue of guilt. Similarly, no objections were raised by the defense counsel or Weber when the trial judge, without hearing any evidence on the issue of insanity, entered judgments of conviction and sentenced Weber to a sixty-four year term of imprisonment.

Weber, rather than seeking post-conviction relief in the trial court, appealed his judgments of conviction to the Wisconsin Court of Appeals claiming, *inter alia*, that he was denied due process of law because he did not receive a jury trial on the issue of his mental capacity after entering his plea of "not guilty by reason of mental disease or defect." The Wisconsin Court of Appeals, after reviewing the trial court record, affirmed Weber's conviction and ruled, in an unpublished order, that:

> "[N]o objection was recorded concerning the absence of a jury determination of [the insanity] issue. Since the issue was not raised in the trial level, this court will not consider it on appeal."

Weber appealed this decision to the Wisconsin Supreme Court but the court denied review.

On October 13, 1981, Weber filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin and the case was assigned to the Honorable Myron Gordon. Weber claimed, *inter alia*, that "his right to a jury trial was violated because his plea of not guilty by reason of mental disease or defect was never presented to the jury." *Weber v. Israel,* 537 F.Supp. 1182, 1183 (E.D.Wis.1982). The district court ruled that:

> "In my opinion, the petitioner's failure to pursue his plea of mental disease was properly deemed a waiver. Mr. Weber did nothing to demonstrate a continued interest in that plea during the year and a half which transpired between the time he 'apparently' entered the plea and the trial itself. Although represented by counsel during that period, there was no effort made by the defense to persist in the defense of mental disease; no objection was made to the format of the actual trial.

> \*   \*   \*   \*   \*   \*

> Accordingly, I reject his contention that his random reference to insanity a year and a half before the trial entitles him to the granting of a writ of habeas corpus."

*Id.* at 1183–84.

Following the district court's decision, Weber submitted a Motion for Reconsideration based upon his contentions that in March 1977, he had been judged mentally ill by the County Court of Dodge County, Wisconsin, and that at his criminal trial in May 1978, Weber had instructed his attorney to pursue the insanity defense.[1] In response to Weber's contentions, the district court conducted an evidentiary hearing on whether Weber had, in fact, waived his plea of "not guilty by reason of mental disease or defect." At the evidentiary hearing, the district court heard testimony from Judge Wedemeyer, the presiding trial judge; Assistant District Attorney Richard Klinkowitz, the trial prosecutor; John Murray, Weber's trial counsel; Detective Cole, a member of the Milwaukee Police Department; the petitioner; and the petitioner's mother, Violet Weber. Based upon the tes-

---

1. There exists no evidence in the record, petitioner's brief, or the district court opinion explaining the purpose of judicial inquiry into Weber's mental condition conducted by the County Court of Dodge County in March 1977. In any event, the court's adjudgment that Weber was mentally ill in March 1977, is an issue separate and distinct from the issues of Weber's competency to stand trial in May 1978, and Weber's mental responsibility for crimes committed before December 1976.

timony elicited at this evidentiary hearing, Judge Gordon ruled that:

> "The statements of [Judge Wedemeyer, Richard Klinkowitz, and Detective Cole] are singularly persuasive; it convinces me that the plea of mental defect was actually withdrawn by Mr. Weber's counsel.

> \*   \*   \*   \*   \*   \*

> Although there is a cloud on this matter because the withdrawal was not reflected in the reporter's notes, I am satisfied that there was a withdrawal of the plea, that it occurred in open court in the presence of both Mr. Weber and the presiding judge, and that it was not recorded because the reporter had not yet arrived in the courtroom at the time of the discussion."

Accordingly, the court denied Weber's Motion for Reconsideration. The issue on appeal is whether the petitioner's plea of "not guilty by reason of mental disease or defect" was properly withdrawn.

## II

■ Before reviewing the district court's finding on the issue of withdrawal, we must initially address the threshold issue of whether the doctrine of waiver bars Weber from obtaining Federal habeas review on the issue of his insanity plea. The doctrine of waiver, in the context of a Federal habeas corpus action, provides that, "[i]f a state withholds the right of appellate review of issues not raised at trial, the federal courts will not undermine the state's interest in orderly procedure by allowing the defendant to litigate the issue in a federal habeas proceeding." *Carbajol v. Fairman,* 700 F.2d 397, 399 (7th Cir. 1983). Thus, as the United States Supreme Court has stated, "when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice." *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982) (*"Engle"*). *See also Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 55 L.Ed.2d 594 (1977); *Farmer v. Prast,* 721 F.2d 602, 605 (7th Cir.1983); *Sanders v. Israel,* 717 F.2d 422, 424 (7th Cir.1983). There exist strong policy reasons for denying a state prisoner Federal habeas review when he has failed to obtain state review of a constitutional claim due to a procedural defect.

> "[T]he trial court has had no opportunity to correct the defect and avoid problematic retrials. The defendant's counsel, for whatever reasons, has detracted from the trial's significance by neglecting to raise a claim in that forum. The state appellate courts have not had a chance to mend their own fences and avoid federal intrusion. Issuance of a habeas writ, finally, exacts an extra charge by undercutting the State's ability to enforce its procedural rules." (footnote omitted).

*Engle,* 456 U.S. at 128–29, 102 S.Ct. at 1572. Accordingly, the Court has held that a state prisoner who failed to adhere to a state's procedural requirement and object to the grand jury composition in advance of trial, *see Francis v. Henderson,* 425 U.S. 536, 538–42, 96 S.Ct. 1708, 1709–11, 48 L.Ed.2d 149 (1976); object to the admission of a confession at trial, *see Wainwright v. Sykes,* 433 U.S. at 86–91, 97 S.Ct. at 2506–08; or contemporaneously object to a jury instruction, *see Engle,* 456 U.S. at 124–35, 102 S.Ct. at 1570–75, was barred from obtaining Federal habeas relief.

■ In the instant case, Weber appealed his judgments of conviction to the Wisconsin Court of Appeals on December 27, 1978, some eight months after the judgments were entered in the Milwaukee County Circuit Court. Weber included in this appeal a claim that he was denied due process of law because he never received a jury trial on his plea of "not guilty by reason of mental disease or defect." While this appeal was pending before the Wisconsin Court of Appeals, the petitioner sought post-conviction relief in the Milwaukee County Circuit Court with the filing of a motion for new trial, alleging that waiver of his preliminary hearing was improper,

the pre-arraignment lineup was unconstitutional, the jury instructions were improper, and he was denied a jury trial on the issue of insanity. In addition, the petitioner filed a motion for modification of sentence. The trial judge found no error in the evidentiary and procedural aspects of the trial nor in the post-trial sentencing and denied the petitioner's motions for a new trial and modification of his sentence. The petitioner, in turn, appealed the denial of these motions to the Wisconsin Court of Appeals, thus placing before the appellate court, Weber's original appeal of his convictions, filed on December 27, 1978, and the trial judge's denial of post-conviction relief. The Wisconsin Court of Appeals dismissed Weber's appeal on the denial of post-conviction relief, ruling that the Milwaukee County Circuit Court was divested of jurisdiction once Weber filed his original appeal on December 27, 1978, and thus, the original trial court could not rule on petitioner's motions for a new trial and modification of sentence. However, the Wisconsin Court of Appeals considered Weber's original appeal, ruling in pertinent part that:

> "[N]o objection was recorded concerning the absence of a jury determination of [the insanity] issue. Since the issue was not raised in the trial level, this court will not consider it on appeal."

Weber appealed this decision to the Wisconsin Supreme Court, but the court denied review.

The opinion of the Wisconsin Court of Appeals clearly reveals that Weber failed to comply with Wisconsin procedure and object to his alleged denial of a jury trial, on the issue of insanity, at the trial court level.[2] As this court noted in *Farmer v. Prast*, 721 F.2d 602 (7th Cir.1983):

> "It is fundamental law in [Wisconsin] that the defendant must object in a timely fashion in order to permit the trial court to correct any possible error at the time it happens. Having failed to do so, the defendant has waived his rights to have the error reviewed on appeal. *See*

> *Maclin v. State*, 92 Wis.2d 323, 330–31, 284 N.W.2d 661, 665 (1979); *State v. Wolter*, 85 Wis.2d 353, 373, 270 N.W.2d 230, 240 (Ct.App.1978)."

721 F.2d at 605 (quoting *State v. Farmer*, 105 Wis.2d 754, 315 N.W.2d 728 (Ct.App. 1981)). The record further reveals that Weber filed an appeal for his judgments of conviction in the Wisconsin Court of Appeals before he ever raised the insanity plea issue in the Milwaukee County Circuit Court through a motion for post-conviction relief. The Wisconsin Court of Appeals properly ruled that, under Wisconsin law, once Weber filed his direct appeal, the state trial court was divested of jurisdiction and could not entertain Weber's motion for post-conviction relief in the first instance. *See Hunter v. Hunter*, 44 Wis.2d 618, 621, 172 N.W.2d 167, 169 (1969). Thus, the appeal record considered by the Wisconsin Court of Appeals and the Wisconsin Supreme Court contained no evidence of an objection raised by the defense counsel or Weber, either during or after the trial in the Milwaukee County Circuit Court, concerning a jury trial on the insanity plea. Furthermore, the record contained no evidence that Weber had filed any post-trial motions on the insanity plea issue, in the trial court, between the date of conviction, May 4, 1978, and the date of the original appeal on December 27, 1978. Due to Weber's procedural defect in failing to object to the alleged denial of a jury trial on the issue of insanity at the trial court level, the Wisconsin state courts declined to review the merits of Weber's insanity plea issue.

In his Federal habeas petition, Weber has presented the court with no cause for, nor actual prejudice arising from, his failure to raise the insanity plea issue at the trial court level. As the United States Supreme Court has stated:

> "While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make the threshold showing.

---

**2.** Upon our independent review of the trial record, we find no objection, raised by defense counsel or Weber, concerning the lack of a jury trial on the issue of insanity.

We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief." *Engle*, 456 U.S. at 129, 102 S.Ct. at 1572. Without a showing of cause and actual prejudice by Weber, this court is barred, by the principles of federalism, from reviewing a Federal habeas claim that has not been reviewed by the state courts due to a procedural defect. *Accord Engle*, 456 U.S. at 128–29, 102 S.Ct. at 1571–72; *Wainwright v. Sykes*, 433 U.S. at 87–90, 97 S.Ct. at 2506–08. Thus, we agree with the district court's original finding that Weber's "failure to pursue his plea of mental disease was properly deemed a waiver." *Weber v. Israel*, 537 F.Supp. at 1183. Accordingly, we hold that in the instant case the doctrine of waiver precludes Weber from obtaining Federal habeas review of his insanity plea issue. *Accord Farmer v. Prast*, 721 F.2d at 604–06; *Sanders v. Israel*, 717 F.2d at 424–25.

■ In so holding, we realize that the district court, upon reconsideration of its original ruling on the insanity plea issue, conducted an evidentiary hearing and found that Weber had, in fact, withdrawn his insanity plea. On appeal, the parties briefed and argued only the issue of withdrawal and thus Weber presented this court with no showing of "cause and actual prejudice" on the issue of waiver.[3] We hasten to make clear, however, that even if Weber had demonstrated a cause for, and actual prejudice arising from, his failure to raise the insanity plea issue at the trial court level, we would affirm the district court's finding that the plea of "not guilty by reason of mental disease or defect" was withdrawn. It is a well-settled principle of Federal law that when this court reviews a district court's findings of fact in a habeas corpus action, we may set aside such findings only if they are clearly erroneous. *United States ex rel. Henne v. Fike*, 563 F.2d 809, 813 (7th Cir.1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978). *See also United States ex rel. Moore v. Brierton*, 560 F.2d 288, 292 (7th Cir.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); *Wilson v. Lash*, 457 F.2d 106, 108 (7th Cir.), *cert. denied*, 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136 (1972). Thus, unless we are left with a "definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), we must accept the trial court's findings. *See Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 855, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982).

■ At the evidentiary hearing conducted in the district court before the Honorable Myron Gordon, Judge Wedemeyer, the presiding trial judge, testified that he had participated in a pre-trial discussion with Weber's counsel, John Murray, and the prosecutor, Richard Klinkowitz, in open court. According to the trial judge's testimony, the discussion:

"related to whether Mr. Murray was going to proceed with Mr. Weber's plea of not guilty by reason of insanity. Mr. Klinkowitz wanted to know if Mr. Murray was going to pursue that defense, and the reason why he wanted to know was he had an expert on call from Madison, and that if he intended to pursue it, he wanted the opportunity of calling that doctor and giving him the time to get to Milwaukee during the course of it. It's my recollection Mr. Murray said, 'No,' they were not going to pursue that defense; and, in fact, he didn't. And with

---

**3.** The respondent also argued that if the case were remanded to the Milwaukee County Circuit Court, Weber could still file a motion for post-conviction relief, and thus Weber has failed to exhaust his state court remedies. The record reveals, however, that Weber has "fairly presented" his federal claim on the insanity plea issue to the Wisconsin state courts, thereby satisfying the exhaustion requirement. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *United States ex rel. Nance v. Fairman*, 707 F.2d 936, 940 (7th Cir.1983); *Toney v. Franzen*, 687 F.2d 1016, 1021–22 (7th Cir.1982).

that, Mr. Klinkowitz didn't take the opportunity of calling the doctor in Madison."

The prosecutor, Assistant District Attorney Richard Klinkowitz, testified that he, defense counsel Murray, and Weber had a pre-trial conversation, before the impaneling of the jury, in Judge Wedemeyer's courtroom. During this conversation, Klinkowitz inquired of Murray if the defendant was going to proceed with his insanity defense. According to Klinkowitz, he had supplied defense counsel Murray with copies of the psychiatrists' reports that the State intended to use at trial, but Murray, in return, had not supplied the prosecution with any psychiatric reports concerning Weber. The purpose of Klinkowitz's inquiry was to determine if it would be necessary for the State to call its psychiatrist, Dr. Fosdale, who was "committed," according to his report on file with the court, to testify that Weber was not suffering from a mental disease or defect at the time of the commission of the alleged crimes. Dr. Fosdale requested the date and time of his court appearance in order that he might arrange his patient schedule accordingly. As defense counsel Murray discussed the insanity issue with Weber, Judge Wedemeyer entered the courtroom and ascended the bench. In response to Klinkowitz's question of whether or not Weber would pursue the insanity defense, Murray approached the podium and stated in the presence of Judge Wedemeyer and Weber, "[W]e do not intend to pursue that defense." According to Klinkowitz, there was absolutely no indication that Weber, who was standing beside the podium, disagreed with the decision not to proceed with the insanity plea or objected to the decision in any manner. Following this conversation, Klinkowitz phoned the State's psychiatrist, Dr. Fosdale, and informed him that

the insanity plea had been withdrawn and that it would not be necessary for him to appear in court. Detective Cole of the Milwaukee Police Department added that he was present during the pre-trial discussion between Klinkowitz and Murray, when Murray informed the trial judge that Weber was not pursuing his insanity defense.[4]

Defense counsel, John Murray, testified that based upon the psychiatric reports that he had received from the District Attorney's office, the transcript of the July 29, 1977 competency hearing before Judge McCormick, the report of a psychiatrist he had personally chosen to examine Weber, and discussions he had with his associates and Weber's previous counsel, he was convinced that he "could not sustain ... the burden of proof" on the insanity plea. Murray recalled that the psychiatric reports he received from the District Attorney's office referred to Weber's behavior as "malingering" or faking. In addition, Murray testified that under Wisconsin law the same jurors hear both portions of the bifurcated trial and thus can be voir dired concerning the guilt issue and the insanity issue. Murray stated that if jurors "believe they are going to be hearing a defense of mental illness, I think that interferes with my getting a good shot on the merits." Accordingly, Murray was of the opinion that the plea of "not guilty by reason of mental disease or defect" was self-defeating and would have interfered with a defense on the merits in Weber's case. Murray testified that the first line of defense in his trial strategy was to attack the credibility of the State's witnesses. Murray recalled that after he had discussed the insanity plea issue with Weber, he (Murray) informed Klinkowitz that the defense would not pursue the plea of "not guilty by reason of mental disease or defect."

---

**4.** The record indicates that due to the time constraints at the evidentiary hearing the district court did not hear the testimony of Detective Cole but rather accepted the stipulated testimony, agreed to by counsel for the petitioner and the respondent, that Detective Cole was, in fact, present in the courtroom when defense counsel Murray informed the trial judge that Weber was not pursuing his insanity defense.

Weber, on the other hand, testified that he and Murray discussed the insanity plea in the court "bullpen" before trial and that Weber had instructed his counsel to go forward with the insanity portion of the trial. According to Weber, he was then informed by Murray that the prosecution was prepared to present psychiatric testimony that Weber was mentally competent at the time of the commission of the alleged crimes. Weber claimed that despite this evidence, he still wanted Murray to pursue the insanity plea. Weber admitted, however, that once he arrived in the courtroom for the start of trial, and throughout the course of the trial, he never said anything to Murray about wanting to pursue the insanity plea. Weber's mother added that after the jury announced its verdict on the plea of "not guilty," she was permitted to visit with her son. During this visit, she remembers Weber asking Murray when the second portion of his trial was going to begin, to which Murray "didn't give a direct answer."

It is undisputed that the better practice, when entering or withdrawing any plea, is to make the entry or withdrawal a part of the trial court record.[5] Due to the failure of the parties in the instant case to record the withdrawal of Weber's insanity plea and thereby make a complete record, the district court conducted a post-trial evidentiary hearing on the withdrawal issue. Based upon the testimony elicited at the evidentiary hearing, and a review of the trial court record, the district court's finding that Weber's counsel withdrew the plea

of "not guilty by reason of mental disease or defect" in open court, before Weber and the presiding judge, is not clearly erroneous. The trial court judge, the prosecutor, and Detective Cole all agree that before trial, Weber's counsel withdrew the insanity plea in open court before the presiding judge. The uncontradicted testimony of Richard Klinkowitz, the prosecutor, supports the district court's finding that Weber was present in the courtroom when the insanity plea was withdrawn. Further, the petitioner never denied his presence in the courtroom at the time of the pre-trial withdrawal of his insanity plea, rather he equivocated, claiming a lack of recall with regard to any proceedings that occurred in the courtroom before the start of trial. Accordingly, the district court's finding that Weber's plea of insanity was withdrawn is not clearly erroneous and the only remaining issue is whether the manner in which Weber's counsel withdrew the plea was proper.

■ The petitioner, not *pro se* but through appellate counsel, argues that even if Weber's trial counsel did withdraw the insanity plea, such withdrawal was ineffective because it was not intelligently and voluntarily agreed to by Weber. Relying upon the United States Supreme Court's holding in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (*"Boykin"*), the petitioner contends that withdrawal of the insanity plea denied him his right to a jury trial on the issue of insanity, and thus required the trial judge

---

5. The case of *Collins v. Israel*, 538 F.Supp. 1211 (E.D.Wis.1982) (*"Collins"*), is directly on point with regard to the failure of the parties in Milwaukee County Circuit Court to record the withdrawal of an insanity plea. In *Collins*, the petitioner had been convicted in Milwaukee County Circuit Court of first degree murder. In his petition for writ of habeas corpus, the petitioner claimed that his trial counsel had withdrawn the insanity plea off the record and without the petitioner's consent. The United States District Court for the Eastern District of Wisconsin, in considering the petitioner's claim, stated:

"All parties, including the trial judge at the postconviction hearing, have conceded that

the withdrawal of the ["not guilty by reason of mental disease or defect"] plea should have been made on the record and that the petitioner should have been questioned to ensure that he understood the proceeding. It would be an elevation of form over substance, however, to vacate the judgment of conviction because the appropriate procedure was not followed, where the evidence subsequently presented overwhelmingly supported the court's finding that the plea was in fact abandoned prior to trial with the full knowledge and consent of the petitioner."

538 F.Supp. at 1215.

to determine if the withdrawal was intelligent and voluntary on the petitioner's behalf. The petitioner claims that in the instant case the trial judge did not make this determination, and therefore the withdrawal was ineffective.

In *Boykin*, the Court held that it was reversible error for the "trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711. The Court reasoned that "a plea of guilty ... is a conviction," *id.*, whereby the defendant waives his "privilege against compulsory self-incrimination ... right to trial by jury ... and right to confront [his] accusers." *Id.* at 243, 89 S.Ct. at 1712. The facts in the instant case are markedly distinguishable from those in *Boykin*. Weber, through counsel, entered pleas of "not guilty" and "not guilty by reason of mental disease or defect." When Weber's counsel withdrew the insanity plea, Weber's plea of "not guilty" remained a part of the record and thereafter Weber received a jury trial on the nine counts of party to the crime of armed robbery, and an eventual acquittal on five of those nine counts. Thus, unlike the facts in *Boykin*, Weber was not deprived of his Federal constitutional privilege against self-incrimination, right to a jury trial on the issue of guilt, or right to confront his accusers, and the State was required to prove Weber's guilt beyond a reasonable doubt.[6]

The record further reveals that in the instant case, Weber's trial counsel withdrew the plea of "not guilty by reason of mental disease or defect" for strategic and tactical reasons. The prosecution had supplied defense counsel with two psychiatric reports stating that Weber was not suffering from mental disease or defect at the time of the commission of the alleged crimes. In addition, the prosecution had a psychiatrist, Dr. Fosdale, who was "committed," according to his reports on file with the court, to testify that Weber was competent at the time of the commission of the alleged crimes. Defense counsel, on the other hand, had absolutely no psychiatric reports or psychiatric testimony to support Weber's plea of insanity. In light of this evidence, defense counsel was convinced that he could not sustain the burden of proof on the issue of insanity. Furthermore, defense counsel Murray testified that if jurors "believe they are going to be hearing a defense of mental illness, I think that interferes with getting a good shot on the merits." According to the Wisconsin bifurcated trial system, jurors are informed of the defendant's insanity plea and that a verdict is required on the plea of "not guilty" before any evidence is introduced on the plea of "not guilty by reason of mental disease or defect." *See* Wis.Stat. § 971.175.

As noted by the court in *State v. Smith*, 3 Ohio App.3d 115, 444 N.E.2d 85 (1981), "[t]here may be important strategic rea-

---

**6.** The foregoing analysis is consistent with the reasoning of the California Court of Appeal in *People v. Redmond*, 16 Cal.App.3d 931, 94 Cal. Rptr. 543 (1971) (*"Redmond"*), where the defendant withdrew his insanity plea after being found guilty of a lesser included offense of the crime charged. The court held that when a defendant withdraws an insanity plea, the trial court must determine the defendant's sanity at that time, and if sane, "a series of questions should be propounded to such defendant and to his counsel and the answers thereto be made of record to meet the requirements of *Boykin v. Alabama* ... *insofar as they might be applicable to the situation presented.*" (emphasis added) 16 Cal.App.3d at 938, 94 Cal.Rptr. at 548. In *Redmond*, the *Boykin* requirements were applicable because the defendant, in effect, was ad-

mitting his guilt by withdrawing his plea of "not guilty by reason of insanity" after having already been found guilty of a lesser included offense of the substantive crime. In the instant case, however, Weber's counsel withdrew the insanity plea before the start of trial and Weber still had a standing plea of "not guilty." Thus, unlike the defendant in *Redmond*, Weber was not admitting his guilt and the *Boykin* requirements were not "applicable to the situation presented" by Weber. *See, e.g., People v. Gaines*, 58 Cal.2d 630, 635–37, 375 P.2d 296, 298–300, 25 Cal.Rptr. 448, 450–52 (1962), *cert. denied*, 373 U.S. 928, 83 S.Ct. 1532, 10 L.Ed.2d 427 (1963), *overruled on other grounds, People v. Morse*, 60 Cal.2d 631, 388 P.2d 33, 36 Cal.Rptr. 201 (Cal.1964).

sons why counsel chooses to withdraw an insanity defense like any other defense, when an unsophisticated client fails to understand the wisdom of that decision. For example, an insanity defense implies to many jurors an admission that defendant committed the act charged...." 3 Ohio App.3d at 118, 444 N.E.2d at 90.[7] Additionally, according to the court in *White v. State*, 17 Md.App. 58, 299 A.2d 873 (1973), "a plea of insanity is no more than the assertion of an affirmative defense.... Like any defense, the question of whether insanity should be raised remains a matter of trial strategy to be determined by counsel after consultation with his client." 17 Md.App. at 61–62, 299 A.2d at 875. Under Wisconsin law, "mental disease or defect" is an affirmative defense, *see* Wis.Stat. § 971.15(3) (1981–82), and withdrawal of a "not guilty by reason of mental disease or defect" plea is considered a matter of trial strategy. *See, e.g., State v. Felton*, 110 Wis.2d 485, 516, 329 N.W.2d 161, 175 (Wis. 1983). The testimony at the evidentiary hearing, found credible by the district court, reveals that defense counsel consulted with Weber before withdrawing the insanity plea for tactical reasons. Thus, Weber's defense counsel properly exercised his tactical judgment and trial strategy in withdrawing the plea of "not guilty by reason of mental disease or defect." More-

over, at no time throughout this habeas corpus proceeding has Weber complained of or alleged ineffective assistance of counsel in entering and subsequently withdrawing the insanity plea.

Finally, based upon the uncontradicted testimony of Assistant District Attorney Richard Klinkowitz, we agree with the district court that Weber was present in the courtroom when defense counsel informed the trial judge that the plea of "not guilty by reason of mental disease or defect" was being withdrawn. Due to Weber's presence in the courtroom at the time that his defense counsel withdrew the insanity plea, Weber had knowledge of such withdrawal. *Accord Collins v. Israel*, 538 F.Supp. at 1215–16. According to the testimony elicited at the evidentiary hearing, Weber gave absolutely no indication that he disagreed with the withdrawal of the insanity plea or objected to the withdrawal in any manner. The record further reveals that at no time, throughout the course of the trial in Milwaukee County Circuit Court, did Weber raise an objection before the trial judge concerning the lack of a jury trial on the issue of insanity. Following the jury's return of a guilty verdict on four counts of the nine count indictment of party to the crime of armed robbery, Weber made no mention to the court that he wished to

---

7. The court in *State v. Smith* noted that "[t]here is some uncertainty whether [withdrawal of an insanity plea] is a matter of strategy within the exclusive control of defense counsel or is a fundamental right within the exclusive control of the defendant himself." 3 Ohio App.3d at 118, 444 N.E.2d at 89. According to the *A.B.A. Standards for Criminal Justice*, section 4–5.2 (1980):

"(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:

(i) what plea to enter;

(ii) whether to waive jury trial; and

(iii) whether to testify in his or her own behalf.

(b) The decision on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial

motion should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client."

On the issue of "what plea to enter" the commentary following section 4–5.2 refers only to the entry of guilty pleas. On the issue of strategic and tactical decisions to be made by the lawyer, the commentary provides, "Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance .... The lawyer should seek to maintain a cooperative relationship at all stages while maintaining the ultimate choice and responsibility for the strategic and tactical decisions in the case." In the instant case, the record reveals that defense counsel consulted with Weber, in the presence of Judge Wedemeyer, Assistant District Attorney Klinkowitz, and Detective Cole, before withdrawing the insanity plea for strategic and tactical reasons.

proceed with the insanity portion of his bifurcated trial. Weber next appeared in the trial court for sentencing, and at that time the prosecutor and the defense counsel both made mention of the competency hearings that Judge McCormick had conducted before the start of trial. In fact, the prosecutor referred to the psychiatric testimony elicited at the July 29, 1977 competency hearing, where Weber was diagnosed as "malingering." Weber was afforded a right of elocution following the remarks of the prosecutor and the defense counsel but he again failed to mention the issue of insanity or the right to a jury trial on the insanity plea.

In light of the fact that defense counsel Murray, Weber, Judge Wedemeyer, and Assistant District Attorney Klinkowitz never referred to the insanity plea throughout the entire course of the trial and the sentencing hearing in Milwaukee Circuit Court, it is self-evident that the insanity plea was, in fact, withdrawn. Based upon the totality of the circumstances, including a judicial determination that Weber was competent to stand trial, Weber's knowledge that his insanity plea had been withdrawn, and his failure to object to such withdrawal at trial or at the sentencing hearing, we hold that Weber's plea of "not guilty by reason of mental disease or defect" was properly withdrawn.

### III

We affirm the district court's denial of petitioner's writ of habeas corpus.