**Alexandre MIRZAYANCE,**
**Petitioner—Appellant,**

**v.**

**Rodney HICKMAN, Warden,**
**Mule Creek State Prison,**
**Respondent—Appellee.**

**No. 01–56839.**
**D.C. No. CV–00–01388–DT.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 2003.

Decided May 9, 2003.

Before BEEZER, FERNANDEZ, and PAEZ, Circuit Judges.

### MEMORANDUM *

Alexandre Mirzayance appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus. We affirm in part, reverse in part, and remand with instructions to hold an evidentiary hearing on the ineffective assistance of counsel claim for abandonment of the not guilty by reason of insanity ("insanity") defense.

Our review is de novo. *Wade v. Terhune*, 202 F.3d 1190, 1194 (9th Cir.2000). The Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–

132, applies because the petition for a writ of habeas corpus was filed on February 9, 2000. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir.2001) (noting that AEDPA applies to petitions filed after April–24, 1996). Under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A habeas petitioner alleging ineffective assistance of counsel under § 2254(d)'s "unreasonable application" clause must show that "the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). *Strickland* holds that counsel is ineffective if counsel's "acts or omissions were outside the wide range of professionally competent assistance" and there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 690, 694.

Mirzayance argues that the district court abused its discretion in not granting an evidentiary hearing on:

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1) the ineffective assistance of counsel claim for abandonment of the insanity defense; and

2) the spectator misconduct claim.

Mirzayance additionally argues that counsel was ineffective for:

3) calling only one expert witness at the guilt stage to testify regarding Mirzayance's mental health;

4) failing to prepare the expert witness to testify regarding premeditation and deliberation;

5) failing to adequately investigate and introduce facts pertaining to Mirzayance's mental health, relationship with the victim, and substance abuse;

6) conceding Mirzayance's guilt of second degree murder;

7) failing to request jury instruction CALJIC 4.21;

8) failing to request jury instruction CALJIC 8.73; and

9) advising petitioner to abandon his insanity defense and concurring in the withdrawal of that defense.

## I

Mirzayance argues that the district court abused its discretion in deciding the ineffective assistance of counsel claim for abandonment of the insanity defense without an evidentiary hearing. We agree. "A state habeas petitioner is entitled to an evidentiary hearing on a claim if he did not receive a full and fair evidentiary hearing in state court and if he alleges facts that, if proven, would entitle him to relief." *Tapia v. Roe*, 189 F.3d 1052, 1056 (9th Cir.

1999).[1] A district court's decision to deny an evidentiary hearing is reviewed for abuse of discretion. *Id.*

Mirzayance did not receive an evidentiary hearing in state court and he alleges facts that, if proven, would entitle him to relief. The district court dismissed the ineffective assistance of counsel claim for abandonment of the insanity defense by citing to *Weber v. Israel*, 730 F.2d 499 (7th Cir.1984). *Weber* involved the abandonment of an insanity defense, but there were tactical reasons for its abandonment. The counsel in *Weber* abandoned an insanity defense because the prosecution had two psychiatric reports stating that Weber was not suffering from a mental disease or defect at the time of the alleged crimes, one of which referred to Weber as "malingering," and defense counsel had *no* psychiatric reports to the contrary. *Id.* at 506–07. The decision to abandon the insanity defense in *Weber* also took place prior to the guilt phase. *Id.* at 505. Defense counsel thought that if the jury knew an insanity phase would follow, the jurors would not give the defendant as much deference on the merits. *Id.*

In Mirzayance's case, the insanity defense was withdrawn *after* the guilt phase and there was a cadre of experts ready to testify that Mirzayance was insane. Dr. Markham, Dr. Sharma, Dr. Vicary, and Dr. Blum were all prepared to testify that Mirzayance met the standard for legal insanity. *See Profitt v. Waldron*, 831 F.2d 1245, 1249 (5th Cir.1987) ("[W]e cannot baptize the decision to forego the insanity defense with the rejuvenating labels of 'tactical' or 'strategic' choice. Judges

1. There is no indication that Mirzayance was not diligent in trying to develop the factual basis of his claim in state court. Mirzayance stated in his federal habeas petition that he requested evidentiary hearings in state court, but that they were denied. *See Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) ("Under the opening clause of [28 U.S.C.] § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.").

wisely defer to true tactical choices—that is to say, to choices between alternatives that each have the potential for both benefit and loss .... we simply can see *no advantage* in the decision to bypass the insanity defense.") (emphasis in original); *see also United States v. Span,* 75 F.3d 1383, 1390 (9th Cir.1996) ("We have a hard time seeing what kind of strategy, save an ineffective one, would lead a lawyer to deliberately omit his client's only defense, a defense that had a strong likelihood of success, and a defense that he specifically stated he had every intention of presenting.").

The record presents conflicting reasons for the abandonment of the insanity defense. Defense counsel states that he decided to waive the insanity phase of the trial when Mirzayance's parents said they would not testify. Mirzayance's parents state that at no time did they refuse to testify. Mirzayance's parents assert that defense counsel unilaterally decided that he could not win the insanity phase of the trial and recommended that it not go forward on the morning that the insanity trial was scheduled to begin.

Bennett Blum, one of the insanity experts, stated that defense counsel called the night before the insanity trial was scheduled to begin to inform him that defense counsel was going to withdraw the insanity plea because defense counsel did not think the insanity case could be won in light of the jury they had. This call took place before defense counsel conferred with Mirzayance.

Mirzayance states that defense counsel talked with him for five minutes on the morning the insanity defense was scheduled to go forward and told Mirzayance that the insanity defense should be withdrawn because, with a finding of first degree murder, the insanity phase of the trial could not be won. Mirzayance explains that he was shielded from the expert testimony relating to his own mental condition. Mirzayance asserts that he had no idea that four experts were prepared to opine that Mirzayance was legally insane when counsel recommended that Mirzayance withdraw his insanity defense.

Attorney Lund, an attorney who represents the Mirzayance family in the civil action between it and defense counsel, stated that defense counsel consulted him on the morning that the insanity defense was withdrawn. Lund explains that defense counsel recommended withdrawing the insanity defense because: 1) Mirzayance's parents were in too much pain to testify; 2) Dr. Markman assured defense counsel that Dr. Markham could arrange for Mirzayance to be placed in a safe psychiatric prison treatment facility; 3) defense counsel believed the trial judge was empathetic towards the Mirzayance family and would instruct that Mirzayance be sent to a psychiatric prison; and 4) defense counsel wanted to avoid a finding that Mirzayance was sane. Dr. Markham denies stating that he could arrange for Mirzayance's placement in a psychiatric facility.

A large number of experts were subpoenaed and ready to testify to Mirzayance's insanity. Mirzayance lacked knowledge of the evidence regarding his own mental state. Defense counsel and those with whom defense counsel spoke gave conflicting statements about why defense counsel recommended the abandonment of the insanity defense on the morning it was scheduled to begin. Given these factors, the district court abused its discretion by not holding an evidentiary hearing on this ineffective assistance of counsel claim. An evidentiary hearing will assist in determining if there were tactical reasons for abandoning the insanity defense or if the withdrawal of the defense was a wholesale

abandonment of the one viable and strong defense Mirzayance had. We remand to the district court for an evidentiary hearing on this claim.

## II

■ The district court did not abuse its discretion in dismissing the spectator misconduct claim without an evidentiary hearing. Mirzayance cannot show that the spectator conduct was "so inherently prejudicial [that it] pose[d] an unacceptable threat to [the] defendant's right to a fair trial" and that there was "an unacceptable risk ... of impermissible factors coming into play." *Holbrook v. Flynn,* 475 U.S. 560, 570, 572, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). This trial was not like a "mob" atmosphere. *See Altemose Const. Co. & Energy Contracting Co. v. Nat'l Labor Relations Bd.,* 514 F.2d 8, 12–13 (3d Cir. 1975) (finding a "mob atmosphere" where defendant was "jeered by a crowd of approximately 100 workers who had gathered at the entrance [to the building]"). Rather, the state trial court closely monitored and supervised spectator conduct. Nor was this proceeding akin to *Norris v. Risley,* 878 F.2d 1178, 1183 (9th Cir.1989), where the wearing of "Woman Against Rape" buttons and the serving of refreshments by members of the Rape Task Force required an evidentiary hearing. The small yellow ribbons worn by a few spectators in this case did not threaten the integrity of the proceedings.

## III

■ The district court correctly held that counsel was not ineffective in presenting only one expert to testify about Mirzayance's mental health at the guilt phase. The choice of what type of expert to use "is one of trial strategy and deserves a heavy measure of deference." *Turner v. Calderon,* 281 F.3d 851, 876 (9th Cir.2002)

(internal quotation marks omitted). Dr. Satz presented a full day of testimony about Mirzayance's mental health. Any additional testimony the other experts could have offered would have been limited to the kind offered by Dr. Satz. *See Babbitt v. Calderon,* 151 F.3d 1170, 1174 (9th Cir.1998) (holding it is not unreasonable for defense counsel to not present largely cumulative testimony). Additionally, it may have been sound trial strategy to present the mental health evidence through one expert in order to avoid creating inconsistencies among experts.

## IV

■ Mirzayance argues that defense counsel provided ineffective assistance by failing to prepare Dr. Satz to testify at trial regarding premeditation and deliberation. However, testimony about the ultimate mental state at issue is not admissible under California law during the guilt phase of a trial. *See* Cal.Penal Code § 29. As the California Court of Appeal correctly noted, the trial court warned Dr. Satz, "you can talk about any testing you gave. You can give general impressions. You cannot testify, however, specifically as to whether [defendant] premeditated in this situation, or formed a specific intent in this situation." The failure to prepare Dr. Satz on these points cannot constitute ineffective assistance of counsel.

## V

Mirzayance argues that defense counsel was ineffective for failing to investigate and present at trial facts pertaining to Mirzayance's mental health, relationship with the victim, and marijuana use.

### 1

■ Mirzayance argues that defense counsel was ineffective for failing to pres-

ent additional mental health evidence in addition to Dr. Satz's testimony. However, it is not unreasonable to avoid presenting cumulative mental health testimony. *See Babbitt,* 151 F.3d at 1174.

### 2

■ Mirzayance argues that defense counsel should have presented evidence of the amicable relationship Mirzayance had with the victim as shown through letters and photographs. However, the relationship evidence was not directly relevant as the letters and photographs were from 1992–1994, one to three years before the 1995 murder.

### 3

■ Mirzayance argues that defense counsel should have introduced additional evidence of Mirzayance's marijuana use. However, defense counsel's tactical decision regarding how to present the marijuana case requires deference. Defense counsel presented multiple statements regarding Mirzayance's marijuana use. Defense counsel introduced Mirzayance's statements to police that he killed because he "was on the drugs," as well as the statement that Mirzayance had smoked two hashish cigarettes shortly before the murder. Mirzayance's statement to a friend that he used marijuana to make the voices in his head go away as well as Dr. Satz's testimony that schizophrenics often use marijuana to self-medicate were also introduced.

### VI

■ Mirzayance argues that counsel was ineffective in conceding to the jury that Mirzayance was guilty of second degree murder. Defense counsel conceded that Mirzayance was guilty of second degree murder and focused on arguing that the murder was caused by Mirzayance's

mental defect such that premeditation and deliberation were not present to support a first degree murder verdict. Mirzayance now argues that defense counsel should have tried to obtain a voluntary manslaughter verdict.

Given the voluntary confession from Mirzayance that he killed his cousin, and the weak evidence of provocation and imperfect self-defense, it was not objectively unreasonable for trial counsel to concede that a murder occurred, and to focus his efforts on showing that the murder was not premeditated. *See People v. Lucas,* 12 Cal.4th 415, 447, 48 Cal.Rptr.2d 525, 907 P.2d 373 (1995) (holding that in light of strong evidence that a homicide occurred, it is "entirely understandable that trial counsel ... made no sweeping declarations of his client's innocence but instead adopted a more realistic approach ...." arguing that "intoxication negated the mental elements necessary for ... premeditated murder") (internal quotation marks omitted).

Although it is possible to mount a defense for voluntary manslaughter based on either provocation, *see People v. Berry,* 18 Cal.3d 509, 515, 134 Cal.Rptr. 415, 556 P.2d 777 (1976), or imperfect self-defense, *see In re Christian S.,* 7 Cal.4th 768, 779, 30 Cal.Rptr.2d 33, 872 P.2d 574 (1994), neither theory was supported by the evidence in this case. Manslaughter through provocation involves a killing during a heat of passion "as would naturally be aroused in the mind of an ordinary reasonable person under the given facts and circumstances...." *See Berry,* 18 Cal.3d at 515, 134 Cal.Rptr. 415, 556 P.2d 777. In this case, it would have been difficult to argue that an "ordinary reasonable person" would have killed because his cousin accused him of being late and yelled at him. *See People v. Marshall,* 13 Cal.4th 799, 849, 55 Cal.Rptr.2d 347, 919 P.2d 1280

(1996) (holding manslaughter instruction unnecessary when "relations between defendant and [the victim] ... were generally smooth and harmonious").

Although Mirzayance stated that he killed the victim because she fought back, "No case has ever suggested ... that such predictable conduct by a resisting victim would constitute the kind of provocation sufficient to reduce a murder charge to voluntary manslaughter." *People v. Jackson,* 28 Cal.3d 264, 306, 168 Cal.Rptr. 603, 618 P.2d 149 (1980), *overruled on other grounds by People v. Cromer,* 24 Cal.4th 889, 898, 103 Cal.Rptr.2d 23, 15 P.3d 243 (2001).

Similarly, a theory of manslaughter through imperfect self-defense was weak. Under a theory of imperfect self-defense, if a defendant "actually but unreasonably believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and cannot be convicted of murder." *Christian S.,* 7 Cal.4th at 783, 30 Cal. Rptr.2d 33, 872 P.2d 574. However, Mirzayance was not under any threat from the victim when he began stabbing her. Two of the stab wounds were fatal. Counsel was not ineffective for choosing not to argue for voluntary manslaughter.

## VII

■ Mirzayance argues that counsel was ineffective for failing to request a modified instruction of CALJIC 4.21. CALJIC 4.21 reads, in pertinent part,

If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in deciding whether defendant had the required [specific intent] [mental state].

Mirzayance argues that defense counsel should have requested a modified version

of CALJIC 4.21 which would have added "or had a mental defect" after "intoxicated." However, defense counsel did advocate for an instruction similar to modified CALJIC 4.21 and vigorously objected to the contrary instruction given by the trial judge.

During discussions with counsel, the judge stated his intention to instruct the jury that "the mental process necessary for a finding of deliberation and premeditation is not dependent on the motivation for the act *nor is the necessary mental process lacking when the considerations reflected on by the defendant were the product of mental disease or defect."* (emphasis added). Defense counsel objected, and when the court indicated its decision to allow the instruction, defense counsel requested an additional instruction to read: "However, you should consider all the defendant's mental processes at the time of the killing as you understand them to be in weighing and considering whether the defendant did in fact deliberate the commission of the crime."

The judge declined to give the supplementary instruction. Although defense counsel's request for an instruction stating that the jury *could* consider mental processes in determining whether the defendant premeditated or deliberated did not succeed, counsel still made these arguments to the court. Defense counsel was not ineffective for failing to request a modified form of CALJIC 4.21 as counsel argued for a similar instruction that was denied.

## VIII

■ Mirzayance argues that counsel was ineffective because he failed to request CALJIC 8.73 (1995). CALJIC 8.73 (1995) reads,

When the evidence shows the existence of provocation that played a part in in-

ducing the unlawful killing of a human being, but also shows that such provocation was not such as to reduce the homicide to manslaughter, and you find that the killing was murder, you may consider the evidence of provocation for such bearing as it may have on the question of whether the murder was of the first or second degree.

The California Court of Appeal determined that counsel's presentation did not fall below an objective standard of reasonableness because there was no evidence of provocation sufficient to support a provocation instruction. The Court of Appeal explained, "[t]hat [the victim] may have been short with defendant does not establish provocation." Given the scarce evidence supporting provocation, the court of appeals' determination that counsel was not ineffective for failing to request CALJIC 8.73 was not an objectively unreasonable application of *Strickland*.

## IX

Mirzayance argues that his counsel was ineffective for advising him to abandon the insanity defense and concurring in that withdrawal. Because we conclude that the district court abused its discretion in denying this claim without an evidentiary hearing, we do not reach the merits of this ineffective assistance of counsel claim at this stage.

## X

We AFFIRM in part, REVERSE in part, and REMAND with instructions to conduct an evidentiary hearing on whether counsel was deficient for recommending and concurring in the withdrawal of the

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

insanity defense, and if so, whether this ineffectiveness prejudiced Mirzayance.

Each party shall bear its own costs.