■ The People of the State of New York, Respondent, v John Lyons, Appellant.—Judgment, Supreme Court, Bronx County (Bonnie Wittner, J.), rendered April 16, 1990, convicting defendant, after a jury trial, of attempted murder in the second degree in violation of Penal Law §§ 110.00, 125.25 (1) and criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (4) and sentencing him to an indeterminate term of 8⅓ to 25 years on the attempted murder conviction and a concurrent indeterminate term of 2⅓ to 7 years on the criminal possession of a weapon conviction, is unanimously affirmed.

The defendant's guilt of the charges was established beyond a reasonable doubt. Three witnesses, one of them the complainant, testified that on January 2, 1989, following an argument in which the complainant was not involved, the defendant went into a building, returned with a gun and shot the complainant in the leg and back, paralyzing him from the chest down. Two of the witnesses, Rosik Ferrara and the complainant had known the defendant, as well as the person whom the defense claimed did the shooting, Kevin Moore, prior to the incident. All three witnesses testified that defendant had gold coverings on his teeth on the date in question and that they saw no one else with gold coverings on that day.

The evidence was that one of the People's witnesses, Rodney Poole, had argued with the defendant about a car which the defendant had allegedly damaged. The car had apparently been lent to the defendant by another person named Lizetta who was upset that the car was damaged. The complainant

arrived on the scene and was shot as he attempted to find out what the argument was about.

The defense was that the shooting was done not by the defendant but by a person named Kevin Moore, who was also present. Both the defendant and a former girl friend of Kevin Moore testified that defendant Lyons gave the gun to Moore who did the shooting. Both testified that Moore had gold coverings on his teeth on that date.

We reject the defendant's arguments on appeal that the trial court committed reversible error when it refused to allow Kevin Moore to invoke his Fifth Amendment privilege before the jury, refused to permit Moore to be questioned about his gold teeth before the jury after Moore had declared his intention to take the Fifth Amendment and refused to permit Moore to be exhibited before the jury. A trial court has discretion as to whether to allow a defendant to call a witness for the purpose of having that witness invoke his privilege against self-incrimination before a jury. *(People v Thomas,* 51 NY2d 466, 472 [1980]; *People v Sapia,* 41 NY2d 160, 163-164 [1976], *cert denied* 434 US 823 [1977]; *see also, People v Berg,* 59 NY2d 294, 298 [1983].)* Here, out of the presence of the jury, the prospective witness, Kevin Moore, testified that he would invoke his Fifth Amendment privilege before the jury. The reiteration of this right before the jury had no probative worth and may have unfairly prejudiced the jury. *(People v Thomas,* 51 NY2d, *supra,* at 472.)* In *People v Thomas,* the Court of Appeals enunciated the basis for the court's discretion on whether or not to permit the prospective witness to invoke the privilege against self-incrimination before the jury. The court stated: "As we held in *People v Sapia* (41 NY2d 160, 163-164, cert den 434 US 823), the decision whether to permit defense counsel to call a particular witness solely 'to put him to his claim of privilege against self incrimination in the presence of the jury' rests within the sound discretion of the trial court * * * The rule is founded on the sound premise that a witness' refusal to testify on constitutional grounds does not, in and of itself, have any real probative significance, although it may have a disproportionate impact upon the minds of the jurors and may tend to create the impression that the witness is guilty of a particular crime * * * In the context of the instant case, for example, there existed a very real danger that the jury would infer from Whitlock's refusal to testify that defendant's contention was correct and that it was Whitlock rather than defendant who had actually committed the Lataillade robbery. Yet, such an inference would

clearly have been unwarranted, since Whitlock's refusal to testify could have been based upon considerations wholly unrelated to the crime at issue in the instant trial. Indeed, inasmuch as the witness is, at least in the first instance, the sole arbiter of the applicability of the constitutional privilege to his own situation * * * a particular witness' decision to refrain from testifying can never mean more than that the witness himself believes that something he might say would tend to implicate him with respect to some criminal wrongdoing of which only he is aware. It would thus be wholly improper in most situations to give the jurors an opportunity to speculate as to the nature of this wrongdoing by allowing a party to parade a witness before the jury for the sole purpose of eliciting in open court the witness' refusal to testify." (51 NY2d, *supra,* at 472-473.)

Moreover, we do not find that the prospective witness' assertion out of the presence of the jury that he was wearing the same gold caps on his teeth that he was wearing on the date of the incident constituted a waiver of the privilege.

Finally, there was no reversible error in the court's refusal to permit the prospective witness, Kevin Moore, to be questioned about gold coverings to his teeth before the jury or to permit the introduction of the gold coverings worn by Moore into evidence. The jury was informed in both the testimony of the defendant and that of Moore's former girl friend that he wore gold coverings on the date in question. Concur—Sullivan, J. P., Wallach, Smith and Rubin, JJ.