**John F. LYONS, Petitioner–Appellee,**

v.

**Sally B. JOHNSON, Superintendent, Orleans Correctional Facility, Respondent–Appellant.**

No. 133, Docket 96–2095.

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1996.

Decided Oct. 18, 1996.

As Amended Nov. 14, 1996.

Robert L. Moore, Assistant District Attorney, Bronx County, Bronx, N.Y. (Robert T. Johnson, District Attorney, Billie Manning, Assistant District Attorney, of counsel), for Respondent–Appellant.

Edward S. Zas, New York City (Barry D. Leiwant, The Legal Aid Society, Federal Defender Division Appeals Bureau, of counsel), for Petitioner–Appellee.

Before NEWMAN, Chief Judge, and OAKES and CALABRESI, Circuit Judges.

OAKES, Senior Circuit Judge:

Respondent-appellant Sally B. Johnson, Superintendent of the Orleans Correctional Facility, appeals from a judgment entered January 18, 1996, in the United States District Court for the Southern District of New York, Kimba Wood, *Judge,* granting the writ of habeas corpus to petitioner-appellee John Lyons. Petitioner was convicted in the Supreme Court of the State of New York, Bronx County, *Judge* Bonnie Wittner presiding, of attempted murder in the second degree and criminal possession of a weapon in the third degree. He was sentenced to serve an indeterminate term of from eight and one-third to twenty-five years' imprisonment. Following affirmance of that conviction by the New York Appellate Division, First Department, *People v. Lyons,* 180 A.D.2d 440, 579 N.Y.S.2d 664 (N.Y.A.D. 1 Dept.1992), the New York Court of Appeals denied Lyons's motion for leave to appeal. *People v. Lyons,* 79 N.Y.2d 1051, 596 N.E.2d 417, 584 N.Y.S.2d 1019 (1992). Lyons then petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second degree attempted murder. The district court granted the petition, finding that the trial court's failure to permit him to present evidence tending to support his defense of misidentification was harmful error and violated his Sixth Amendment right to a fair trial. *Lyons v. Johnson,* 912 F.Supp. 679 (S.D.N.Y.1996). We affirm and remand.

## I

### Facts

On January 2, 1989, Lyons and another man, Kevin Moore, were involved in an argument that took place in a crowd in the Bronx. Lyons and Moore are both young African–American males and were both wearing black leather jackets on that day. All parties agree that at a certain point in the dispute Moore spoke to Lyons, following which the latter went to Moore's apartment and

emerged carrying a gun. Confusion arose. Three shots were fired in the resulting melée, two of which hit José Quiles.

Three prosecution witnesses, Rosik Ferrara, Rodney Poole, and Quiles, stated at trial that petitioner fired the gun at Quiles. Ferrara knew Moore quite well, but witnessed the shooting from her apartment window across the street. Poole had never met either Lyons or Moore, and did not come forward to identify the former as the shooter until two days prior to trial—over a year after the events. When asked at trial how he was able to identify Lyons as the perpetrator, Poole stated that "the most descriptive thing" about the man who pulled the trigger was that he was wearing gold fronts, i.e., removable gold caps, on his four front teeth. Although Quiles, the victim, stated that he had seen petitioner holding a gun just before he was shot, he was unable to identify the perpetrator to the police in either of his first two interviews, and testified that because his back was turned during the shooting he could not see his assailant's face.

Two defense witnesses testified that Kevin Moore, not John Lyons, fired the gun. Petitioner testified on his own behalf that Moore had asked him to get the gun from Moore's apartment, that he had accordingly retrieved the gun, and had handed the gun to Moore, who then fired it at Quiles. Petitioner's girlfriend, Michelle Pantojas, likewise testified that Lyons handed the gun to Moore and that it was Moore who shot Quiles. She further stated that there was little difference in physical build between Moore and Lyons. Pantojas had known both men for several months before the shooting, and witnessed the events from the street corner.

The same three witnesses for the prosecution stated that Lyons was the only person at the scene of the crime wearing gold fronts on his four front teeth. In contrast, Lyons testified that both he and Kevin Moore were wearing four gold fronts on the day of the shooting.[1] During *voir dire*, Moore confirmed petitioner's testimony by admitting that he owned four gold fronts and had been wearing them on January 2, 1989.[2] The defense attorney asked Moore whether he would plead the Fifth Amendment if asked to testify that he had been wearing the fronts during the shooting; Moore replied that he would do so.

Petitioner asserted on appeal and on habeas review that the trial court erred in three respects. First, the court refused to allow the defense to display Kevin Moore, wearing gold fronts, to the jury. The court initially ruled that Moore's exhibition was impermissible because, as a federal prisoner, he could not be present in the jury's deliberation room and thus could not be marked as an exhibit. After defense counsel offered to submit a photograph of Moore for use during the deliberation stage, the court ruled that a live display of Moore was not relevant because all of the witnesses were familiar with both men and, thus, identification was not disputed. The court stated that it would permit a photograph of Moore without gold fronts to be admitted; defense counsel declined. Second, the trial court ruled that it would permit Moore to claim his Fifth Amendment right against self-incrimination rather than repeat his *voir dire* testimony that he owned gold fronts and had worn them during the shooting. Judge Wittner found that Moore had not waived his Fifth Amendment rights in *voir dire* because he had not realized that his statements were self-incriminatory. Third, the court held that New York law precluded admission of Moore's *voir dire* testimony as hearsay evidence. The jury, therefore, never heard any evidence supporting Lyons's and Pantojas's testimony that Kevin Moore wore gold fronts on the day of the crime and was the actual perpetrator.

## II

### District Court Granting of Habeas

Lyons's petition for a writ of habeas corpus asserts that his Sixth Amendment right to a fair trial was infringed by the trial

---

1. Pantojas, however, testified that only Moore, and not petitioner, was wearing gold fronts that day.

2. Moore was wearing the same gold fronts when he made his *voir dire* statements. *See Lyons v. Johnson,* 912 F.Supp. at 683 n. 3 (quoting *voir dire* transcript).

court's errors. The district court granted the petition on January 10, 1996, finding that the trial court had committed error in two respects: first, in denying the defense's request to display Kevin Moore, wearing gold fronts, to the jury; and, second, in holding that Moore's *voir dire* testimony was inadmissible hearsay. *See Lyons*, 912 F.Supp. at 684.[3] The court found that Moore's appearance was highly relevant to the issue of misidentification and should have been permitted. Furthermore, although Moore's *voir dire* testimony was admittedly hearsay, Judge Wood held that under New York evidence law, either of two exceptions to the general rule excluding hearsay would apply to admit the testimony: the hearsay exception for third-party declarations against penal interest, and the exception for statements made at a prior judicial proceeding.[4]

The district court also found that the standard of review enunciated by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), was the appropriate standard to apply in assessing whether the trial court's errors were harmless. That standard provides that "before a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. *Chapman* also placed the burden of proof on this issue upon the state. *See id.* The state argued in favor of the

harmless error test applied in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The *Brecht* Court held that when a federal court receives a case on collateral habeas review, it should review the trial court's rulings more deferentially than provided for by the *Chapman* standard, which is to be used when the court receives a case on direct appeal. *Brecht* provides that the trial court's error must have had a " 'substantial and injurious effect or influence in determining the jury's verdict' " to be deemed harmful. *Brecht*, 507 U.S. at 623, 113 S.Ct. at 1713–14 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).[5] The district court noted, however, that in *Brecht* the reviewing state courts had found trial court error, but had held that error to be harmless after applying *Chapman*. *Chapman* had, in fact, been applied four separate times in that case—twice by state appellate courts and twice by federal courts. Judge Wood found that review of *Lyons*, in contrast, mandated application of *Chapman* because the state courts had not found that the trial court committed error and thus had never applied *Chapman* harmless error review to the case.

The district court also found, however, that even under the *Brecht* standard, the trial court's error in failing to display Moore to the jury and refusing to admit his *voir dire*

---

3. The district court agreed with the trial court that Moore had not waived his Fifth Amendment rights by making his admissions in *voir dire*. *Lyons*, 912 F.Supp. at 684. Because we hold that the trial court committed error in refusing to display Moore to the jury, we do not reach this constitutional question.

4. The state argues on appeal that the exception for declarations against penal interest was not applicable in this situation because Moore was not aware at the time he made his statements that they were against his penal interest, and that the exception for statements made in a prior proceeding did not apply because *voir dire* is a concurrent, internal proceeding rather than a prior proceeding. *See Lyons*, 912 F.Supp. at 685–86.

5. Although *Brecht* implied that the burden of proof is placed upon the defendant, the Supreme Court later clarified in *O'Neal v. McAninch*, —— U.S. ——, ——–——, 115 S.Ct. 992, 995–96

(1995), that if the question of prejudice is in equipoise, the writ of habeas should be granted.

For the sake of precision, if not brevity, we also address a very recent holding of the Court relating to the *Brecht* standard. In *Brecht*, the Court stated that certain " ' "structural defects in the constitution of the trial mechanism ... defy analysis by 'harmless error' standards." ' " *Brecht*, 507 U.S. at 629, 113 S.Ct. at 1717 (citations omitted). A case concerning jury instruction error, *California v. Roy*, —— U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996), again noted the distinction between structural and trial error, and confirmed that "trial error," at least of the sort involved in *Roy*, is to be evaluated on collateral habeas review under the *Brecht/Kotteakos* standard while "structural error" is not. The instant case, involving error in evidentiary rulings, is clearly "trial error" of the sort governed by the *Brecht/Kotteakos* standard. *Roy* therefore does not affect our holding or alter our statements regarding *Brecht* and *Chapman*.

testimony was not harmless. *Lyons,* 912 F.Supp. at 694–95. Judge Wood held that the jury must have disbelieved the testimony of Lyons and Pantojas in order to have found Lyons guilty. Because that testimony could have been significantly bolstered by a physical comparison of Moore and Lyons wearing their respective gold fronts, the exclusion of Moore's display was harmful error. Furthermore, Moore's *voir dire* admission that he had worn gold fronts not only bolstered petitioner's testimony, it also went directly to the matter of misidentification by undermining the testimony of all three prosecution witnesses who stated that only Lyons wore gold fronts. Most critically, it went to the accuracy of Poole's identification, which was based heavily upon the question of which man wore gold fronts. Because Judge Wood found the trial court's errors to be harmful, she granted petitioner's request for the writ of habeas corpus. We review that decision *de novo. See Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996).

### III

### Discussion

We agree with the district court that Lyons ought to have been permitted to exhibit Moore wearing his gold fronts. Because we find that the trial court's failure to permit a display of Moore was harmful constitutional error, we do not address whether the district court correctly ruled that New York hearsay exceptions would permit admission of Moore's *voir dire* statements.

■ The state trial court erred in ruling that the display of Moore would be inadmissible for lack of relevance. As the state concedes in its briefs, Judge Wittner was incorrect in her finding that all of the witnesses knew both Moore and Lyons and that no issue of misidentification existed. On the contrary, one of the state's eyewitnesses, Poole, was unfamiliar with both Moore and Lyons, and the identifications made by other witnesses for the prosecution were disputed by petitioner on grounds which were far from frivolous. The testimony of both Lyons and Pantojas, asserting that Moore was wearing gold fronts when the shooting took place and

that he, not Lyons, fired the gun, establishes beyond peradventure the relevance of other evidence going to misidentification. A physical display of Moore wearing gold fronts was relevant and ought to have been admitted.

■ Furthermore, the trial court's offer to admit a photograph of Moore did not correct the error. As the district court noted, a photo could not possibly provide the jury with enough information to assess the likelihood that the prosecution witnesses misidentified Lyons. Only a physical comparison of Lyons wearing his gold fronts and Kevin Moore with *his* gold fronts would permit the jury thoroughly and accurately to determine how similar Moore's general build and facial characteristics were to Lyons's. On a matter bearing directly upon the ultimate question of innocence, the defendant was entitled to have the jury view the physical traits of the two men in order to both discount the testimony of the prosecution's witnesses and support the defense witnesses' testimony that Moore fired the shots.

Having decided that the trial court committed error, we turn to the matter of the standard of harmless error review. Although we note that this court has previously held that, for reasons of federalism and comity, *Brecht* is the proper standard to apply whenever a federal court reviews a conviction on habeas petition rather than on direct review, *see Bentley v. Scully,* 41 F.3d 818 (2d Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996), Judge Wood viewed *Brecht* as limited to cases in which there had been at least one prior application of the *Chapman* standard. Yet, due to the magnitude of the trial court's error in refusing to permit a display of Moore with his gold fronts to the jury, we need not decide whether *Brecht* can be limited as Judge Wood suggests or whether *Chapman* or *Brecht* is the appropriate standard to apply in this case. Regardless of which standard is used, the trial court's error was not harmless.

■ It is quite possible that, after physically comparing the two men both wearing gold fronts, the jury would have decided that all three prosecution witnesses mistakenly identified Lyons as the shooter. None of the

identifications was beyond reproach. Ferrara was some distance away from the scene, arguably too far away to make a positive identification between two young African-American men wearing black leather jackets. Her testimony might very well have lost credibility had the jury been permitted to view the relative statures of the two men and assess for itself whether her identification was reliable at that distance. Poole's identification supports only the guilt of a man wearing gold fronts, who might just as well have been Moore as Lyons. If the jury saw that Moore in gold fronts bore a strong resemblance to Lyons, it could easily have believed Lyons's and Pantojas's testimony that Moore wore gold fronts during the shooting and that Poole (who had never met either man before that day) confused the two men. Likewise Quiles's identification, which must have been based purely upon stature and clothing given that he did not see his assailant's face, would also be undermined by a jury finding that Moore and Lyons physically resembled each other. In short, had the jury been permitted to view the two men, it could have found that Moore, not Lyons, shot Quiles.

The issue of misidentification is absolutely fundamental to a criminal trial. Although this case seems to be solidly built upon the identification of three eyewitnesses, this court has noted on more than one occasion that eyewitness testimony is often highly inaccurate. We have stated that:

> [t]here can be no reasonable doubt that inaccurate eyewitness testimony may be one of the most prejudicial features of a criminal trial....

> ... Because the intrinsic unreliability of eyewitness identifications is so often compounded with the distorting effects of the natural suggestion to the witness that the person on trial is the guilty one, it is no exaggeration to venture that '[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.'

*Kampshoff v. Smith,* 698 F.2d 581, 585–86 (2d Cir.1983) (quoting P. Wall, *Eye–Witness Identification in Criminal Cases* 26 (1965)). As we have already noted, the identifications provided by the prosecution's eyewitnesses were shaky from the start. At a bare minimum, the possibility of misidentification would have raised a reasonable doubt as to Lyons's guilt had the jury been permitted to see if there were a resemblance between Lyons and Moore when each wore gold fronts. The prosecution cannot bear the burden *Chapman* places on it to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Evidence which directly and strongly supports the possibility that a criminal defendant was misidentified certainly raises the specter of a reasonable doubt so as to be considered harmful error under *Chapman.*

More broadly, however, petitioner has shown that his inability to have his defense of innocence and misidentification substantiated by a jury's comparison of his physical appearance with that of the man who two eyewitnesses attested was the actual perpetrator had a "substantial and injurious effect or influence in determining the jury's verdict" as required by the more deferential *Brecht* standard. The jury could not have reached its verdict without believing the prosecution's witnesses, whose testimony would have been significantly weakened by the display of Moore in his gold fronts. Pantojas's and Lyons's own testimony would have been likewise bolstered. The exclusion of Moore's display clearly had a "substantial and injurious effect or influence" in this case.

### Conclusion

We find that the trial court's error was not harmless, and affirm the district court's grant of the writ of habeas corpus. The case is remanded to that court for entry of a revised judgment ordering Lyons's release unless the state promptly affords him a new trial.