John Robert TAPIA, Petitioner–
Appellant,

v.

Ernest C. ROE, Warden, Respondent–
Appellee.

No. 97–15295.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1999.

Decided Aug. 31, 1999.

**1054**

Donald Thomas Bergerson, San Francisco, California, for the petitioner-appellant.

Catherine A. Rivlin, Deputy Attorney General, San Francisco, California, for the respondent-appellee.

Before: LAY,[1] PREGERSON, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

John Robert Tapia ("Tapia"), convicted in California state court of premeditated murder and second degree murder and serving a sentence of life without parole, appeals from the district court's denial of his petition for a writ of habeas corpus. We are asked to decide whether the giving of an erroneous aiding and abetting instruction, not reviewed for error on direct appeal in state court, is subject to review under the standard of *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), or *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Because we conclude that no harmful error could have occurred under the application of either standard, we affirm.

## FACTS

The facts of this case could have come from the pages of an Elmore Leonard novel, or a Quentin Tarantino screenplay. Tapia was a middleman in the illegal drug trade, making his living buying drugs from Joseph Domino ("Domino") and reselling them to others, including Marcus West ("West")—who lived with Tapia—for street sale.

West became an addict and fell into debt to both Tapia and Domino. West was also in debt to Greg Hammed ("Hammed"), whom he had persuaded to invest in an unsuccessful methamphetamine laboratory. West was acquainted with Louis Reyes ("Reyes"), who made his living robbing drug dealers. West, hoping to pay off his debts, wanted Reyes to involve both himself and Hammed in these "rip-offs." Reyes suggested they rob West's "connection," not knowing that West's supplier of drugs was Tapia. West apparently did not agree to the plan, but Hammed—who also did not know Tapia was West's connection—later spoke with West about it, in front of Tapia. Tapia, angry and mistrustful, took West to the home of Bill Baker ("Baker") where West was held captive for approximately one week and interrogated by Tapia and Domino. Tapia then decided that Reyes had to be confronted. Tapia and Domino had West call Reyes, and inform him that West's connection had left an ounce of raw heroin in a motor home parked in front of a house, which could be easily stolen.

Tapia then had Hammed and West drive Reyes to the motor home. Reyes was armed with a .22 caliber pistol. Michael Hernandez ("Hernandez") accompanied Reyes as his backup. Baker, on Tapia's instructions, followed secretly, prepared to shoot West and Reyes (and presumably Hernandez) if Hammed signaled that there was trouble. Domino hid in the house, Tapia in the bushes.

When the trio of West, Reyes, and Hammed arrived, Hammed, followed by Baker and West, entered the house. West later testified he then heard two shots; Hammed that he heard Tapia say "halt" or "freeze" and then three shots. Neighbors testified that one or two voices were heard saying "did you shoot him?" and "get down motherfucker" or "crawl motherfucker."

Tapia disputes whether he or Domino fired the shot that fatally wounded Her-

---

1. Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

nandez. The forensic experts differed at trial. West and Hammed testified that someone—either Domino or Baker—carried the wounded Hernandez into the house. Domino stabbed Hernandez, and told the others to do the same. All did. Tapia took Reyes into the bathroom of the house and beat him, seizing his .22 caliber gun.

Hernandez's body was loaded into a pickup, and Tapia and Domino drove off with the body and Reyes to "go fishing." Some time later, the bodies of Reyes and Hernandez, chained to Masonite blocks, washed up on the banks of the Stanislaus River. Reyes had been shot in the head with a .22 caliber weapon.

Tapia and Domino were charged under California law with two counts of murder and the special circumstances of multiple murder and murder while lying in wait. The state also alleged both personally inflicted great bodily injury, were armed, and personally used firearms. Their cases were severed for trial.

Tapia testified in his own defense, claiming Domino had shot both Hernandez and Reyes, and that he had acted under duress from Domino and in self defense. According to Tapia's version of events, Hernandez drew a weapon on him, Tapia yelled "freeze," and, while both he and Hernandez fired their weapons, a third shot by Domino actually killed Hernandez. Tapia also contended that he intended only to warn Reyes to stop the "rip-offs," and did not intend to kill him.

A California state jury convicted Tapia of the premeditated murder of Hernandez while armed with a handgun, and the second-degree (unpremeditated) murder of Reyes. The jury found true the special circumstance of "lying in wait" with regard to Hernandez, and the special circumstance of multiple murder with regard to Reyes. The jury also found that Tapia had been armed and personally used a firearm with regard to both murders, and that Tapia had personally inflicted great bodily injury on Hernandez, but not on Reyes.

Tapia pursued a direct appeal and habeas corpus relief in the California state court system. He then filed for habeas corpus in the federal courts, under 28 U.S.C. § 2254. A magistrate judge submitted a report recommending that his petition be denied. After considering objections to the report, the district court ordered the habeas corpus petition denied. Tapia was then issued a certificate of probable cause to pursue this pre-Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") appeal.

## STANDARD OF REVIEW

Because Tapia's initial petition was filed prior to the effective date of AEDPA, AEDPA's provisions do not apply. *See Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996).

The district court's decision to grant or deny a section 2254 habeas petition is reviewed de novo. *See Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir. 1998). Findings of fact made by the district court relevant to its decision are reviewed for clear error. *See Bonin v. Calderon*, 59 F.3d 815, 823 (9th Cir.1995). This court may affirm on any ground supported by the record, even if it differs from the rationale of the district court. *See id.*

The standard for determining whether habeas relief should be granted because of trial error is whether the alleged error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Trial errors that do not meet this test are deemed harmless. *See Eslaminia*, 136 F.3d at 1237. If this court is "utterly unable" to determine if an error is harmless, but is in "grave doubt," it will not treat the error as harmless. *See Bonin*, 59 F.3d at 824.

We review de novo whether a constitutionally deficient jury instruction is

harmless error. *See Hart v. Stagner*, 935 F.2d 1007, 1012 (9th Cir.1991). We also review de novo whether an instruction violates due process by creating an unconstitutional presumption or inference. *See Hanna v. Riveland*, 87 F.3d 1034, 1036–37 (9th Cir.1996).

 We review a *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim to determine whether the defendant has made a showing that without a violation there would have been a reasonable probability of a different result, such as to undermine confidence in the outcome of the trial. *See Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A state habeas petitioner is entitled to an evidentiary hearing on a claim if he did not receive a full and fair evidentiary hearing in state court and if he alleges facts that, if proven, would entitle him to relief. *See Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir.1995). The court's decision to deny an evidentiary hearing is reviewed for abuse of discretion. *See Villafuerte v. Stewart*, 111 F.3d 616, 633 (9th Cir.1997).

## ISSUES AND ANALYSIS

### I. *Beeman* Error

 All parties agree that the aiding and abetting instruction given the trial jury was erroneous under *People v. Beeman*, 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984), as it failed to instruct the jury to find "intent to encourage or facilitate the criminal offense." The Supreme Court ruled in *California v. Roy*, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996), that federal courts reviewing such claims must determine only whether "the error 'had substantial and injurious effect or influence in determining the jury's verdict,'" *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (quoting *Kotteakos*, 328 U.S. at 776, 66 S.Ct. 1239). Tapia contends, however, that *Roy* does not control, as in his case—unlike *Roy*—no state court ever reviewed the *Beeman* error under the *Chapman*, 386 U.S. at 24, 87 S.Ct. 824, "harmless beyond a reasonable doubt" standard of harmless error review. Thus, Tapia argues the district court was required to conduct *Chapman* review of the error, which he believes would lead to a grant of relief.

We need not decide whether *Brecht* or *Chapman* review is appropriate to the determination of whether the *Beeman* error was harmless in this case, as the error was harmless under either standard. *Cf. Hanna*, 87 F.3d at 1038 n. 2 (refusing to decide issue as error was not harmless under either standard).[2] The jury's separate de-

---

2. This circuit has never ruled on Tapia's contention that *Chapman* review should be used on habeas review when no state court has tested error with *Chapman* review, *see Hanna*, 87 F.3d at 1038 n. 2 (refusing to reach the issue), but other circuits are split, with the Eighth Circuit and arguably the Second Circuit taking the minority position argued by Tapia. *See Orndorff v. Lockhart*, 998 F.2d 1426 (8th Cir.1993) (holding that *Chapman* harmless error review will be conducted when error is tested for harmlessness for the first time on habeas); *Lyons v. Johnson*, 99 F.3d 499 (2d Cir.1996) (refusing to decide the issue and affirming on other grounds the district court decision in *Lyons v. Johnson*, 912 F.Supp. 679 (1996), using *Chapman* review when testing error for harmlessness for the first time on habeas). *But see Hassine v. Zimmerman*, 160 F.3d 941 (3d Cir.1998) (holding that *Brecht/Kotteakos* should be applied on habeas, even when no state court had ever evaluated claim using *Chapman* on direct review); *Hogue v. Johnson*, 131 F.3d 466 (5th Cir.1997) (holding that *Brecht/Kotteakos* should be applied to all habeas review, as reasons given by Supreme Court in *Brecht* are fully applicable whether or not state court conducted *Chapman* review); *Sherman v. Smith*, 89 F.3d 1134 (4th Cir.1996) (en banc) (holding that *Brecht/Kotteakos* should be used in habeas, even when state courts failed to use *Chapman*); *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir.1995) (rejecting Eighth Circuit application of *Chapman* and using *Brecht/Kotteakos* for all habeas review); *Tyson v. Trigg*, 50 F.3d 436 (7th Cir.1995) (same); *Horsley v. Alabama*, 45 F.3d 1486 (11th Cir.1995) (same).

termination that Tapia was guilty of special circumstances related to both murders shows that it necessarily determined that Tapia "had or shared the specific intent to kill" both of the victims, the equivalent of finding the omitted "intent to encourage or facilitate the criminal offense" element of aiding and abetting in these circumstances. Thus, if the jury did find Tapia guilty on an aiding and abetting theory, rather than as the actual perpetrator, the omission of the intent element from the aiding and abetting instruction could not have had an "injurious effect or influence in determining [their] verdict," *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710, and was "harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. 824.[3]

## II. Duress instruction

We also conclude that any error in the jury instruction on Tapia's duress defense to the murder of Reyes was harmless and reject Tapia's assertion that the instruction compelled the jury to return a murder verdict when they might not have otherwise.

■■■ Tapia's argument that the judge improperly injected penalty considerations into the guilt phase of the trial, by instructing the jurors that a duress defense is not available for murders with special circumstances, is without merit. The judge was required to tell the jurors of the constraints of California law, which would remove their ability to consider his defense of duress if they found multiple murder, and thus there was reason to "inject" this mention of penalty into the instructions. *See* Cal.Penal Code § 26.6.

■■■ Tapia further argues that the instruction erroneously told the jurors they could disregard the defense of duress to

the killing of Reyes, if they found that the killing of Hernandez was a murder. The emphasis that the instruction places on the Hernandez murder, and the failure to refer to the need to make a finding on the Reyes murder as well, could, as Tapia argues, have deprived him of his due process right under California law to have a duress defense until multiple murder was found by the jury. However, under any standard of review, no harmful error could have occurred.[4]

The facts of this case are unique. Tapia was charged with the special circumstance of multiple murder with regard to two murders, but raised a duress defense only to the second. Once the jury determined that Tapia was responsible for the murder of Hernandez, while he technically retained the defense of duress to the killing of Reyes, there was no possible opportunity for the jury to consider his duress defense.

As defined by California law, duress can excuse crimes, including murder without special circumstances, because someone under duress is deemed incapable of committing a crime, even though all of the elements of the crime are present. *See* Cal.Penal Code §§ 26.6 (duress), 190.2 (special circumstances). Thus, the jury in reflecting on Tapia's responsibility for Reyes' killing would necessarily determine whether the elements of murder were present, before reaching the question of duress. Once the jury determined that Tapia was responsible for Hernandez's murder, it could either determine Tapia had not murdered Reyes—in which case no duress defense would need to be considered—or it could determine that Tapia had also murdered Reyes. If the jury made

---

**3.** While the Supreme Court in *Roy* rejected this circuit's application of a special standard of review which allowed courts to find *Beeman*-type errors harmless *only* if the jury necessarily found the omitted element, its opinion does not foreclose us from considering this as one way in which *Brecht*'s (or *Chapman*'s) standard of harmless error may be met. *See Roy,* 519 U.S. at 4, 117 S.Ct. 337.

**4.** While Tapia raises the same question of whether *Chapman* or *Brecht* review is appropriate, as we again conclude that the error was harmless under either standard of review we need not resolve the issue.

the second of these two possible determinations, it would have found Tapia guilty of "multiple murders" and thus, at that instant, the duress defense would be removed legally. In neither scenario would the jury ever factually consider duress. Thus, any error in the duress instruction in these circumstances was plainly harmless.

### III. *Brady v. Maryland* Error

 Finally, Tapia asserts that the prosecution wrongly suppressed a statement by Thomas Shea ("Shea"), a jailhouse informant, that Domino, also convicted for these crimes, admitted to shooting both Hernandez and Reyes. Tapia contends this statement was exculpatory and that by withholding it the prosecution violated its *Brady v. Maryland* obligations. Under *Brady*, evidence must be disclosed if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "reasonable probability" does not require a showing that a different verdict would have resulted, but that "in [the] absence [of the evidence] [defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555.

We agree with the district court's conclusion that the Shea statement, if it did anything, implicated Tapia as well as Domino in the murders, and thus no *Brady* violation occurred. The statement supports a theory that both Tapia and Domino shot both victims. Insofar as ambiguities in the statement might be construed to support a theory that only Domino shot one or the other of the victims, the statement does nothing to undermine the conspiracy and aiding and abetting theories under which Tapia was also charged. The statement does not meet the "reasonable probability" threshold and does not undermine confidence in the verdict. *See id.*

Because, as discussed above, Tapia's allegations as to the content of the tape, if proven, would not entitle him to relief, he is not entitled to an evidentiary hearing. *See Turner*, 63 F.3d at 815. We further find that the district court's refusal to hold an evidentiary hearing on the contents of the tape was not an abuse of discretion. *See Villafuerte*, 111 F.3d at 633.

AFFIRMED.